# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| REGINELLA CONSTRUCTION CO., INC., ) ) ) Plaintiff, ) ) ) v. ) ) STATE FARM FIRE AND CASUALTY ) COMPANY and STATE FARM ) GENERAL INSURANCE COMPANY, ) ) Defendants. ) | Civil Action No. 15-989 Chief Magistrate Judge Maureen P. Kelly Re: ECF No. 4 |

## MEMORANDUM OPINION AND ORDER

KELLY, Chief Magistrate Judge

**I.      INTRODUCTION**

Presently before the Court is a Motion to Dismiss (ECF No. 4) filed by State Farm Fire and Casualty Company and State Farm General Insurance Company ("State Farm" or "Defendants"), pursuant to Federal Rule of Civil Procedure 12(b)(6), with respect to all claims pled in the Complaint (ECF No. 1-2) filed on July 8, 2015, by Reginella Construction Co., Inc. ("Plaintiff" or "Reginella"), in the Court of Common Pleas of Allegheny County, Pennsylvania. Reginella's claims are asserted under the laws of the Commonwealth of Pennsylvania. Defendants removed the case to the United States District Court for the Western District of Pennsylvania on July 27, 2015. (ECF No. 1). This Court exercises subject-matter jurisdiction over Reginella's claims pursuant to 28 U.S.C. §§ 1332(a) (diversity). For the reasons that follow, Defendants' Motion to Dismiss will be GRANTED.

## II. PROCEDURAL AND FACTUAL BACKGROUND

On or about May 4, 2005, Mark A. Eck ("Eck") purchased a home located in Verona, Pennsylvania, from Pelone Land, LLC. (ECF No. 1-3 at 25). The home was constructed by Reginella. (ECF No. 1-3 at 25). In June, 2012, Eck observed "bulging" of the floors on the second floor of the home. (ECF No. 1-3 at 28). Eck thereafter filed a Complaint against Reginella in the Court of Common Pleas of Allegheny County in July, 2013. (ECF No. 1-3 at 7 – 12). In an Amended Complaint filed in November, 2013, Eck attributed the bulging floors – among other structural issues – to Reginella's use of substandard or faulty materials, and improper construction methods. (ECF No. 1-3 at 24 – 29).

Reginella alerted State Farm of the aforementioned complaints. (ECF No. 1-2 at 6). Reginella had obtained a comprehensive business liability policy from State Farm beginning in July, 2004, and extending until July, 2005. (ECF No. 1-2 at 4). Reginella subsequently renewed the policy, but cancelled its coverage after May, 2006. (ECF No. 1-2 at 4). Given that the above policies were in effect at the time of Reginella's construction of the Eck house, it was Reginella's belief that State Farm was required to defend and indemnify against the Eck claims. (ECF No. 1-2 at 6).

In a letter dated February 21, 2014, State Farm rejected Reginella's request for indemnity and assistance in defense of the Eck claims. (ECF No. 1-2 at 6). As justification, State Farm cited the following language from Reginella's former policies: "[t]his insurance applies only: 1. to **bodily injury** or **property damage** caused by an **occurrence** which takes place in the **coverage territory** during the policy period."[1] (ECF No. 1-4 at 2 – 3) (emphasis in original).

---

[1] State Farm goes on to note additional grounds for denial of Reginella's claim, including that "this insurance does not apply: 13. to **property damage** to **your work** arising out of it or any part of it and included in the **products-completed operations hazard**[;]" and that policy exclusions include "bodily injury, property damage, personal

State Farm then cited the Amended Complaint filed by Eck, noting that because the allegedly improper construction was not discoverable until the floors began to bulge in June, 2012, there was not an "occurrence," within the meaning of the policy, during the policy period. (ECF No. 1-4 at 5).

In November, 2014, Reginella filed a Complaint to Join Additional Defendants in the action initiated by Eck. (ECF No. 1-2 at 6). Reginella asserted that two subcontractors, Stark Truss Company, Inc., and Empire Today, LLC, were liable for the improper construction leading to the Eck claims. (ECF No. 1-2 at 6). Arbitration of the suit ensued and, while Eck was to receive $23,390.00 in damages from Reginella, Stark Truss Company, Inc. was required to indemnify Reginella and reimburse Reginella for $3,800.00 in attorney fees. (ECF No. 1-2 at 6).

On July 8, 2015, Reginella filed the instant Complaint against State Farm in the Court of Common Pleas of Allegheny County. (ECF No. 1-2 at 1 – 10). At Counts I and II, Reginella asserts claims for breach of contract and bad faith denial of insurance coverage, in violation of Pennsylvania state law, and seeks compensatory damages in the amount of $8,413.00 for unpaid attorney fees related to defending the Eck claims, as well as interest, punitive damages, and attorney fees and costs. (ECF No. 1-2 at 10). State Farm removed the case to this Court on July 27, 2015 (ECF No. 1), and filed the present Motion to Dismiss on August 3, 2015. (ECF No. 4). The matter is fully briefed (ECF Nos. 5, 9, 10), and is ripe for disposition.

### III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain a short and plain statement of a claim showing that the pleader is entitled to relief. Dismissal of a complaint or portion of a complaint is warranted under Federal Rule of Civil Procedure 12(b)(6) when a

---

injury or advertising injury arising out of the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any fungus[.]" (ECF No. 1-4 at 3 – 4) (emphasis in original).

claimant fails to sufficiently state a claim upon which relief can be granted. Avoiding dismissal under Rule 12(b)(6) requires a pleading party's complaint to provide "enough factual matter" to allow the case to move beyond the pleading stage of litigation; the pleader must "'nudge his or her claims across the line from conceivable to plausible.'" *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 – 35 (3d Cir. 2008) (quoting *Bell Atlantic Co. v. Twombly*, 550 U.S. 544, 556, 570 (2007)).

In assessing the merits of a claim subject to a motion to dismiss, a court must engage in a two-part analysis. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 – 11 (3d Cir. 2009). First, factual and legal elements of a claim must be distinguished. *Id.* Second, it must be determined whether the facts as alleged support a "plausible claim for relief." *Id.* In making the latter determination, the court must be mindful that the matter pleaded need not include "detailed factual allegations," *Phillips*, 515 F.3d at 231 (quoting *Twombly*, 550 U.S. at 555), and the court must construe all alleged facts, and draw all inferences gleaned therefrom, in the light most favorable to the non-moving party. *Id.* at 228 (citing *Worldcom, Inc. v. Graphnet, Inc.*, 343 F.3d 651, 653 (3d Cir. 2003)). Moreover, a pleading party need only "put forth allegations that 'raise a reasonable expectation that discovery will reveal evidence of the necessary element[s].'" *Fowler*, 578 F.3d at 213 (quoting *Graff v. Subbiah Cardiology Assocs., Ltd.*, 2008 WL 2312671 (W.D. Pa. June 4, 2008)). A well-pleaded complaint, even when "it strikes a savvy judge that actual proof of . . . facts is improbable," will not be dismissed as long as the pleader demonstrates that his or her claim is plausible. *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 555 – 56).

Nevertheless, the facts provided do need to raise the expectation of relief above a purely speculative level, and must include more than "labels and conclusions, and a formulaic recitation

of the elements of a cause of action." *Phillips*, 515 F.3d at 231 – 32 (quoting *Twombly*, 550 U.S. at 554 – 56). Rule 8(a)(2) "requires a 'showing' rather than a blanket assertion of an entitlement to relief." *Id.* at 232. "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Fowler*, 578 F.3d at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## IV. DISCUSSION

### A. Count I – Breach of Contract

At Count I of Reginella's Complaint, it is asserted that State Farm breached its contractual duty to Reginella by declining to defend against the Eck claims. (ECF No. 1-2 at 7 – 8). Reginella contends that State Farm's decision was made without any reasonable basis, in that: (1) the duty to defend is triggered whenever the facts pled in the complaint against the insured create the potential that any claim therein may be covered by the underlying insurance policy; and (2) the allegedly improper construction work was completed during the policy period, and the facts pled by Eck were not so specific as to eliminate the possibility that damages were reasonably apparent during the policy period. (ECF Nos. 1-2 at 7 – 8; 9 at 6 – 9). State Farm counters by stating that the Eck claims clearly articulated that the damage caused by faulty construction was not reasonably apparent until six years after the insurance policy expired. (ECF Nos. 5 at 5 – 7; 10 at 2 – 4). Therefore, because the underlying policy was occurrence-based, coverage was not triggered because the damage was not reasonably apparent during the policy period. (*Id.*).

As an initial matter, the Court notes that in Pennsylvania the duty to defend is an obligation separate and distinct from the duty to indemnify. *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 225 (3d Cir. 2005) (citing *Erie Ins. Exch. v. Muff*, 851 A.2d 919, 925 (Pa. 2004)). The

5

duty to defend is the broader of the two obligations. *Id.* at 225 – 26 (citing *Mut. Benefit Ins. Co. v. Haver*, 725 A.2d 743, 746 n.1 (Pa. 1999); *Erie Ins. Exchange v. Claypoole*, 673 A.2d 348, 356 n.3 (Pa. Super. Ct. 1996)). However, both duties "'flow from a determination that the complaint triggers coverage.'" *Id.* at 226 (quoting *Gen. Accident Ins. Co. of Am. v. Allen*, 692 A.2d 1089, 1095 (Pa. 1997)). "'[T]he obligation of a casualty insurance company to defend an action brought against the insured is to be determined solely by the allegations of the complaint in the action.'" *Holy Ghost Carpatho-Russian Greek Catholic (Orthodox) Church of the Eastern Rite of Phoenixville, Pa. v. Church Mut. Ins. Co.*, 492 F. App'x 247, 249 (3d Cir. 2012) (quoting *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 908 A.2d 888, 896 (Pa. 2006)).

Yet, allegations contained in the complaint need only create a *possibility* of coverage under the insured's policy to trigger the duty to defend. *Sunoco, Inc. v. Ill. Nat'l Ins. Co.*, 226 F. App'x 104, 108 (3d Cir. 2007) (citing *Air Prods. & Chemicals, Inc. v. Hartford Accident & Indem. Co.*, 25 F.3d 177, 179 (3d Cir. 1994)). Additionally, the allegations of the complaint must be viewed as true, and be liberally construed in the insured's favor. *Am. and Foreign Ins. Co. v. Jerry's Sport Center, Inc.*, 2 A.3d 526, 541 (Pa. 2010) (citing *Frog, Switch & Mfg. Co., Inc. v. Travelers Ins. Co.*, 193 F.3d 742 (3d Cir. 1999)). Nonetheless, not all claims will be capable of triggering the duty to defend; the Court must "compare the terms of the . . . policy with the nature of the allegations of the underlying complaints." *Aetna Cas. And Sur. Co. v. Roe*, 650 A.2d 94, 98, 100 (Pa. Super. Ct. 1994) (citing *D'Auria v. Zurich Ins. Co.*, 507 A.2d 857, 859 (Pa. Super. Ct. 1986)).

The Court will begin by looking at the terms of the underlying insurance policy. The policy provides, in relevant part, that: "[t]his insurance applies only: (1) to **bodily injury** or

**property damage** caused by an **occurrence** which takes place in the **coverage territory** during the policy period." (ECF No. 1-2 at 38) (emphasis in original). Further, "**occurrence** means: a. an accident, including continuous or repeated exposure to substantially the same general harmful conditions which result in **bodily injury** or **property damage**; or b. the commission of an offense, or series of similar or related offenses, which results in **personal injury** or **advertising injury**." (ECF No. 1-3 at 1) (emphasis in original). It is clear, based upon the above language, that the underlying policy issued to Reginella by State Farm was an "occurrence" policy. In Pennsylvania, an occurrence policy will "'indemnify for any loss from an event that occurs within the policy period, regardless of when the claim is made.'" *Pa. Nat'l Mut. Cas. Ins. Co. v. St. John*, 106 A.3d 1, 5 n. 3 (Pa. 2014) (quoting *Black's Law Dictionary* 810 (7th ed. 2009)). Plaintiff's policy period was from July 2, 2004, through May 11, 2006. (ECF No. 1-2 at 4).

Next, the Court turns to the Eck claims. The Amended Complaint states that "bulging has commenced to occur beneath the floors on the second floor of the home causing the floors to become uneven and potentially unsound," condensation has accumulated "in the ceiling of the garage of the home, causing property damages to the ceiling," "laminated flooring in the rooms on the second floor of the [Eck] home [have] become damaged by way of bulging," and "additional property damages, which are currently obscured by the garage ceiling and floors of the [Eck] second floor rooms has occurred." (ECF No. 1-3 at 26 – 27). This was believed to be the result of "failure to utilize appropriate and non-defective or a sufficient amount of materials in the construction of the home," "failure to utilize appropriate construction methods and means," and "improperly insulated or installed duct work." (*Id*.). Additionally, "structural components and other components may be sustaining water damages or damages from mildew or from mold which has or may be accumulating on the components causing additional damage to

7

as yet unknown additional structures and components in the [Eck] home." (*Id*.). The amended complaint goes on to state that "[t]he bulging to the [Eck's] floors on the second floor of the [Eck] home and the additional property damages were not observed before approximately June of 2012 and could not have been observed by [Eck] before then." (ECF No. 1-3 at 28). "None of the damage to the [Eck's] floor, as described, or the other property damages and losses could have been discovered as the condition at issue was a latent defect in the construction performed." (ECF No. 1-3 at 29).

Based upon the above, the Court is compelled to find that the totality of the Eck claims unequivocally point to an "occurrence" taking place only after Reginella's insurance policy had expired. Even viewed in the light most favorable to Reginella, the Amended Complaint made clear that the damages to the Eck home were not reasonably apparent until June, 2012, due to the hidden nature of the alleged construction defects. Although the cause of the damages to the Eck home was arguably within the coverage period, "the cause of injury…has no special relevance to determining the date an insurance policy is triggered, unless specifically required by the language of the applicable policy of insurance." *St. John*, 106 A.3d at 15. Where, as here, there is no policy language requiring the cause of injury to be identified, Pennsylvania courts apply the "first manifestation rule" to occurrence policies; that is, the court looks to when injury is "reasonably apparent," *i.e.*, when it is first manifested. *St. John*, 106 A.3d at 15 – 16; *Cincinnati Ins. Co. v. Devon Int'l, Inc.*, 924 F. Supp. 2d 587, 592 (E.D. Pa. 2013). *See also Appalachian Ins. Co. v. Liberty Mut. Ins. Co..*, 676 F.2d 56, 62 (3d Cir. 1982) ("There can be no question but that the aspect of the occurrence which must take place within the policy period is the 'result,' that is, the time when the accident or injurious exposure produces personal injury."). The date on which an injury was first manifested solely depends upon the facts pled in the complaint. *D'Auria*, 507

A.2d at 860. Once again, the cause of the injury is not pertinent to determining when an occurrence took place. *D'Auria*, 507 A.2d at 861.

There is nothing pled in the Eck claims that would support Reginella's assertion that damages could have been reasonably apparent before the State Farm insurance policy expired, and no reasonable reading of the Eck claims would allow for a conclusion to the contrary. As such, State Farm's duty to defend was not triggered. No breach of contract occurred, and the Court will dismiss Count I of Reginella's Complaint.

### B. Count II – Bad Faith

At Count II of Reginella's Complaint, it is asserted that State Farm's denial of Reginella's request to defend and indemnify against the Eck claims was made in bad faith. (ECF No. 1-2 at 8 – 10). Reginella contends that State Farm's decision was the result of: (1) a failure to conduct a diligent investigation into the Eck claims; and (2) improper interpretation of the terms of its insurance contract. (ECF Nos. 1-2 at 8 – 10; 9 at 9 – 10). State Farm responds that Reginella's claim is based solely upon its disagreement with State Farm's interpretation of the insurance contract, and that even an incorrect interpretation of the insurance contract – if reasonable – defeats a bad faith claim. (ECF Nos. 5 at 8 – 10). State Farm asserts that Reginella failed to plead facts sufficient to demonstrate that State Farm's conduct was unreasonable, or that State Farm was aware of or recklessly disregarded its alleged unreasonableness. (*Id.*).

In Pennsylvania, 'bad faith' is considered to be "'any frivolous or unfounded refusal'" by an insurer to perform in accordance with the obligations outlined in an insurance policy *J.C. Penney Life Ins. Co. v. Pilosi*, 393 F.3d 356, 367 (3d Cir. 2004) (quoting *Terletsky v. Prudential Prop. & Cas. Ins. Co.*, 649 A.2d 680, 688 (Pa. Super. Ct. 1994)). Pursuant to 42 Pa. Cons. Stat. § 8371, a plaintiff may recover for the bad faith of an insurer only when clear and convincing

evidence shows that the insurer: "(1) did not have a reasonable basis for denying benefits under the policy; and (2) knew or recklessly disregarded its lack of a reasonable basis in denying the claim." *Id.* (citing *W.V. Realty, Inc. v. N. Ins. Co.*, 334 F.3d 306, 311 (3d Cir. 2003)). "The 'clear and convincing' standard requires that the plaintiff show 'that the evidence is so clear, direct, weighty and convincing as to enable a clear conviction, without hesitation, about whether or not the defendants acted in bad faith.'" *Id.* (quoting *Bostick v. ITT Hartford Group, Inc.*, 56 F. Supp. 2d 580, 587 (E.D. Pa. 1999)).

As discussed at length above, State Farm's denial of assistance in the defense of the Eck claims was based upon a plain reading of the insurance contract, and was in accordance with the law regarding coverage under occurrence-based policies. State Farm therefore had a reasonable basis to deny Reginella's request for assistance and thus, even viewed in the light most favorable to Reginella, the facts pled do not establish a plausible claim for bad faith. Count II of Reginella's Complaint must, therefore, be dismissed.

**V.  CONCLUSION**

Based upon the foregoing, Reginella has failed to state claims upon which relief can be granted. The Eck claims against Plaintiff did not trigger Defendants' duty to defend, because damages were not reasonably apparent within the underlying insurance policy coverage period. The facts pled also cannot support a plausible claim for bad faith. The Court notes that the inadequacies in Reginella's Complaint are not likely to be remedied by supplemental pleadings; the Eck claims – having been previously resolved – will not change, and neither will the terms of the State Farm policy. However, to the extent Reginella determines that it can remedy the deficiencies identified herein, the Court will give it the opportunity to file an Amended Complaint.

10

Accordingly, the following Order is entered:

AND NOW, this 5th day of February, 2016, upon careful consideration of the Motion to Dismiss submitted on behalf of State Farm, the Brief in Opposition to State Farm's Motion to Dismiss filed by Reginella, and State Farm's Reply Brief, IT IS HEREBY ORDERED that State Farm's Motion to Dismiss, ECF No. 4, is GRANTED. IT IS FURTHER ORDERED that, should Reginella choose to file an Amended Complaint in order to cure the deficiencies cited in this Memorandum Opinion, it shall do so on or before February 26, 2016.

BY THE COURT:

*s/ Maureen P. Kelly*
Maureen P. Kelly
Chief United States Magistrate Judge

cc/ecf: All counsel of record.